IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID DOYLE<br>176 Wolf Creek Rd<br>Del Rio, Tennessee, 37727<br><br>    Plaintiff,<br> v.<br><br>RIVERSIDE RECOVERY SERVICE, LLC<br>c/o Travis Owens, Statutory Agent<br>103 Second Avenue<br>Chesapeake, Ohio, 45619<br><br>  -and-<br><br>TODD WELLS<br>107 Elizabeth Way,<br>South Point, Ohio, 45680<br><br>  -and-<br><br>AMY SMART<br>212 E Chestnut Street,<br>Mount Vernon, Ohio, 43050<br>  -and-<br><br>JENNIFER WILFONG<br>2950 Ackley Road,<br>Guysville, OH 45735<br><br>    Defendants. | CASE NO.:<br><br>JUDGE:<br><br><u>COMPLAINT FOR VIOLATIONS OF<br>THE FAIR LABOR STANDARDS ACT<br>AND THE OHIO MINIMUM FAIR<br>WAGE STANDARDS ACT</u><br><br><u>(Jury Demand Endorsed Herein)</u> |

Plaintiff, David Doyle, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

**PARTIES**

1. Doyle is an individual residing in Del Rio, Tennessee.

1

2. Riverside Recovery Service, LLC ("RRS") is a limited liability company organized under the laws of the State of Ohio whose principal place of business is located at 48 Private Drive 339 South Point, Ohio, 45680.

3. At all times referenced herein, Smart was and/or is the Executive Director and owner of RRS.

4. At all times referenced herein, Smart supervised and/or controlled the employment of Doyle with RRS and acted directly or indirectly in the interest of RRS in relation to its employees, including controlling and/or establishing its day to day operations and respective compensation practices; therefore, Smart is an employer within the meaning of Article II, Section 34a of the Ohio Constitution and the Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 203(d).

5. At all times referenced herein, Wells was a supervisor or manager for RRS.

6. At all times referenced herein, Wells supervised and/or controlled the employment of Doyle with RRS and acted directly or indirectly in the interest of RRS in relation to its employees, including controlling and/or establishing its day to day operations and respective compensation practices; therefore, Wells is an employer within the meaning of Article II, Section 34a of the Ohio Constitution and FLSA, 29 U.S.C.§ 203(d).

7. At all times referenced herein, Wilfong was the Human Resources Manager for RRS.

8. At all times referenced herein, Wilfong supervised and/or controlled the employment of Doyle with RRS and acted directly or indirectly in the interest of RRS in relation to its employees, including controlling and/or establishing its day to day operations and respective compensation practices; therefore, Wilfong is an employer within the meaning of Article II, Section 34a of the Ohio Constitution and FLSA, 29 § U.S.C. 203(d).

## PERSONAL JURISDICTION

9. Defendants hire citizens of the state of Ohio, contracts with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

10. Doyle performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

11. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction of this case under 28 U.S.C. §§1331 and 1341, inasmuch the matters in controversy are brought pursuant to the FLSA, 29 U.S.C § 215, 216, *et seq*, and the Families First Coronavirus Response Act ("FFCRA"), Pub. L No 116-117, 134 Stat. 178 (2020).

13. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Doyle's state law claims under the Ohio Minimum Fair Wages Standards Act ("OMFWSA") and the Ohio Constitution because those claims derive from a common nucleus of operative facts.

14. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

## COVERAGE

15. At all times referenced herein, RRS formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the

     production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

16. At all times referenced herein, RRS was a "named enterprise" under the FLSA in that it was a business "providing medical or nursing care for residents" through inpatient services.

17. At all times referenced herein, RRS was a company with less than 500 employees subject to the FFCRA, which in turn is comprised of the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family Medical Leave Expansion Act ("EFMLEA").

18. During all times material to this Complaint, RRS was Doyle's "employer" within the meaning of Section 3(d) of FLSA, 29 U.S.C. § 203(d); Section34a, Article II, of the Ohio Constitution; and the Ohio Minimum Fair Wages Standards Act ("OMWFSA").

## FACTS

19. RRS provides outpatient and inpatient services to those suffering from addition and other disorders.[1]

20. Doyle is a former employee of RRS, where he worked as a House Monitor.

21. At all times referenced herein, Doyle was paid hourly.

22. At all times referenced herein, Doyle would log in and log out using a biometric electronic device ("Electronic Time Punch System").

23. From time to time, the Electronic Time Punch System would not work, and Doyle would have to submit a "time clock fix it sheet" to be paid for the hours he worked.

---

[1] Exhibit "A."

24. Doyle usually worked three 14 hour shifts per workweek, for a total of forty-two hours per week, with no meal break.

25. Doyle sometimes worked more than forty-two hours in a week by working extra hours or working an additional shift.

26. Doyle typically worked third shift, from 6:00pm in the evening until 8:00am the following day.

27. Doyle worked for Defendant from 6:00pm on March 1, 2020 through 8:00am on March 2, 2020.

28. Doyle had already worked forty-two hours during the workweek in which March 1, 2020 fell and was picking up an extra shift for a total of fifty-six hours.

29. Due to technical issues with the Electronic Time Punch System, Doyle was unable to punch in to record his hours on March 1, 2020.

30. Doyle promptly notified Wells that he was unable to clock in using the Electronic Time Punch System.

31. Wells provided Doyle with a time clock fix it sheet to report his hours.

32. Doyle submitted a time clock fix it sheet to Defendant indicating that had worked from 6:00pm to 8:00am on March 1, 2020 through March 2, 2020 ("First Fix It Request").

33. Despite Doyle's submitting the First Fix It Request, Defendant failed to pay him for working on March 1, 2020.

34. Defendant only paid Doyle for working forty-two hours during the week in which the March 1, 2020 shift fell.

35. As a result of Defendant's failure to pay Doyle for the hours he worked on March 1, 2020, Defendants failed to pay Doyle for all overtime hours he worked during that workweek.

5

36. Subsequently, Defendants retaliated against Doyle for submitting the First Fix It Request by docking him a full hour's pay no less than on three occasions during March of 2020 when Doyle was five minutes late ("Retaliatory Docking").

37. As a result of Defendants' Retaliatory Docking, Doyle was not paid for all overtime hours he worked.

38. Defendants Retaliatory Docking was an adverse action against Doyle because Doyle had made protected reports about his unpaid wages.

39. Subsequently, on or about March 28, 2020, Doyle filled out a second time clock fix it sheet indicating that he had not been paid for the hours he worked on March 1, 2020 ("Second Fix It Request").[2]

40. Doyle specifically indicated in the Second Fix It Request that it was his second request.

41. Defendant again failed to pay Doyle for the hours he worked on March 1, 2020.

42. Subsequently, Doyle complained to Wells about Defendants failure to pay him for all hours worked.

43. Wells responded to Doyle by stating that he (Wells) had submitted both of Doyle's Fix It Requests to "administration" and that Doyle would have to contact "administration" to get his pay corrected.

44. Subsequently, Doyle contacted Smart and Wilfong separately about not being paid for the work he performed on March 1, 2020.

45. Both Smart and Wilfong told Doyle they would "look into" his complaints about not being paid for the work he performed on March 1, 2020.

46. Niether Smart nor Wilfong ever got back to Doyle about his unpaid wages.

---

[2] Exhibit "B."

47. Subsequently, Doyle complained to Wells that no one from "administration" (Smart and Wilfong) had ever gotten back to him.

48. Wells responded to Doyle by giving him a "grievance form" to write out his complaint.

49. Doyle completed the "grievance form" and gave it to Wells.

50. Upon information and belief, Wells provided the "grievance form" to Smart.

51. Upon information and belief, Wells provided the "grievance form" to Wilfong.

52. Alternatively, Wells did nothing with Doyle's "grievance form" and improperly retained it.

53. Subsequently, Doyle was scheduled to be off from work from approximately April 9, 2020 through April 17, 2019 ("Vacation Time").

54. Doyle intended to travel to Tennessee during his Vacation Time to attend a court hearing related to his divorce.

55. Due to COVID-19, the Tennessee court cancelled Doyle's hearing.

56. Doyle did not travel outside of Ohio during his Vacation Time.

57. On April 16, 2020, Wells contacted Doyle by text message and stated that Doyle need to call him.

58. Doyle called Wells back ("April 16, 2020 phone call").

59. During the April 16, 2020 phone call, Wells told Doyle he had to quarantine for 14 days before he could be scheduled to work again because he had been out of state.

60. Wells told Doyle he could not work his next scheduled day, April 17, 2020.

61. Doyle advised Wells that despite his prior plans, he had not left Ohio.

62. Wells told Doyle he could not return to work on April 17, 2020 unless he provided some documentation demonstrating that his court appearance had been cancelled.

63. It was not necessary under any written policy of Defendant that Doyle provide documentation that his court appearance had been cancelled.

64. Defendants arbitrarily created the requirement that Doyle provide documentation that his court appearance had been cancelled simply to prevent Doyle from returning to work.

65. Defendants' preventing Doyle from returning to work was an adverse action against Doyle because Doyle had made protected complaints about his unpaid wages.

66. Wells tried to prevent Doyle from returning to work in order to retaliate against Doyle for making complaints about Defendants' failure to pay him for all hours worked.

67. Subsequently, Doyle attempted calling the Tennessee court to obtain the documentation Defendants required.

68. Doyle had to leave numerous voicemails with the Tennessee court before he finally was able to reach someone in the clerk's office ("Clerk").

69. The Clerk advised Doyle that while paperwork documenting that his hearing had been cancelled could be provided, Doyle would have to pick up the paperwork in person at the Tennessee courthouse.

70. On April 22, 2020, Doyle notified Wells of his predicament and inability to readily obtain the paperwork Wells had requested ("April 22, 2020 Email").

71. In his April 22, 2020 Email, Doyle also explained to Wells that he reasonably believed that he would be entitled to compensation under the ("FFCRA") if he could not come back to work:



72. Wells did not respond to Doyle's April 22, 2020 Email.

73. On April 23, 2020, Doyle emailed Smart to explain his situation and again ask if he would be entitled to compensation under the FFCRA ("April 23, 2020 Email").

74. Smart responded to Doyle's April 23, 2020 Email with indignation, stating "I am very familiar with the policy for ensuring my staff is paid during this period of time."

75. Shortly after Smart responded to Doyle, Wells sent Doyle a text message stating "Doyle you should be back at work tomorrow."

76. On April 30, 2020, Wells required Doyle to report to the "admin" office the following day, May 1, 2020 for a meeting at 8:00am ("May 1, 2020 meeting").

9

77. Doyle attend the May 1, 2020 meeting.

78. The May 1, 2020 meeting lasted a little over an hour.

79. The May 1, 2020 meeting occurred outside Doyle's scheduled hours of work.

80. Defendants did not pay Doyle for the time he spent participating in the May 1, 2020 meeting.

81. During the May 1, 2020 meeting, Defendants told Doyle that he was going to be written up and placed on a "behavior contract" because he communicated with a terminated employee about her termination.

82. Doyle had talked to the terminated employee, but it was not against any policy of RRS to do so.

83. During the May 1, 2020 meeting, Doyle told Defendants that he did not know it was against the rules to talk to a terminated employee.

84. In reality, Doyle had done nothing wrong by talking to the terminated employee.

85. In reality, Defendants were trying to find any reason they could to terminate Doyle because of his complaints regarding his unpaid wages and rights under the FFCRA.

86. Doyle was never presented with the threatened write up or "behavior contract."

87. On May 8, 2020, Doyle was scheduled to start work at 6:00pm.

88. Due to working third shift, Doyle is typically awake at night and sleeps during the day.

89. On May 8, 2020, Wells sent Doyle a text message at 1:32pm stating that Doyle had to report to "admin" at 4:00pm for another meeting ("May 8, 2020 Text Message").

90. Doyle was sleeping when Wells sent the May 8, 2020 Text Message.

91. Wells knew Doyle would be sleeping when he sent the May 8, 2020 Text Message.

92. Doyle did not wake up until approximately 5:00pm on May 8, 2020.

93. Doyle first discovered Wells' text message regarding the 4:00pm meeting on when he woke up.

94. Doyle immediately called Wells to explain that he had been sleeping and did not see his text message.

95. Wells responded by telling Doyle not to report to work again and that he would be contacted on Monday, May 11, 2020 to discuss his failure to appear at the May 8, 2020 meeting.

96. Defendants did not contact Doyle on May 11, 2020.

97. On May 13, 2020, Doyle learned from a co-worker that he had been terminated.

98. Doyle contacted Wells to report that he had been told by the co-worker that he had been terminated.

99. Wells responded to Doyle by instructing him to contact Wilfong.

100. Subsequently, Doyle contacted Wilfong.

101. Wilfong confirmed that Doyle had been terminated, purportedly for missing the May 8, 2020 meeting.

102. Upon information and belief, Wells and Smart and Wilfong each participated in making the decision to terminate Doyle.

103. In reality, Defendants had set Doyle up to be terminated by giving him unreasonably short notice of a meeting during hours they knew Doyle would be sleeping.

104. Defendants' purported reason for terminating Doyle is a pretext for retaliation because Doyle had complained about not being paid for all hours he had worked.

105. Defendants' purported reason for terminating Doyle is a pretext for retaliation because Doyle had complained about his reasonable belief that he was entitled to compensation under the FFCRA as a result of Defendants involuntarily submitting him to a fourteen-day quarantine.

106. As a result of Defendants' wrongful conduct, Doyle has suffered damages.

## COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA
## (29 U.S.C. § 207)

107. Doyle restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

108. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

109. Doyle was not exempt from the right to receive overtime pay under the FLSA during his employment with Defendants.

110. Doyle is entitled to be paid overtime compensation for all overtime hours worked.

111. As a result of Defendants' failure to properly compensate Doyle for all hours he worked in excess of forty in a given week at a rate not less than 1.5 times Doyle's regular rate of pay, Defendants violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

112. Doyle is entitled to damages in the amount of his unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including her attorneys' fees and costs.

113. At all times relevant to this action, Defendants willfully failed and refused to pay Doyle overtime wages required by the FLSA, causing Doyle to suffer damage in amounts to be proven at trial.

114. Defendants either recklessly failed to investigate whether their failure to pay Doyle an overtime wage for the hours he worked in excess of 40 per week during the relevant time period violated the Federal Wage Laws of the United States, intentionally misled Doyle to

believe that Defendants were not required to pay him overtime wages, and/or Defendants concocted a scheme pursuant to which they deprived Doyle the overtime pay he earned.

115. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

116. Defendants violated the FLSA without a good faith belief that their conduct was lawful.

117. Doyle requests recovery of his attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b)

## COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.

118. Doyle incorporates by reference the allegations in the preceding paragraphs.

119. At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the OMFWSA.

120. At all relevant times, Defendants have employed and continue to employ, "employees," within the meaning the OMFWSA.

121. Doyle was an employee of Defendants as that term is defined by the OMFWSA.

122. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

123. Defendants failed to pay Doyle overtime compensation for all hours he worked in excess of forty per week.

124. In denying Doyle all overtime compensation due, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

125. As a direct and proximate result of Defendants' unlawful conduct, Doyle has suffered and will continue to suffer a loss of income and other damages.

126. Having violated the OMFWSA, Defendant is liable to Doyle pursuant to O.R.C. § 4111.10 for the full amount of his unpaid overtime and for costs and reasonable attorneys' fees.

### COUNT III: FAILURE TO PAY WAGES IN VIOLATION OF R.C. § 4113.15 (OHIO PROMPT PAYMENT ACT)
### (Asserted Against RRS Only).

127. Doyle incorporates by reference the allegations in the preceding paragraphs.

128. During all times material to this complaint, RRS was covered by the Ohio Prompt Payment Act, R.C. § 4113.15 ("OPPA") and Doyle was employed by RRS within the meaning of OPPA.

129. The OPPA requires that RRS pay Doyle all wages, including unpaid overtime wages on or before the first day of each month, for wages earned by Doyle during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of the month, for wages earned by Doyle during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

130. At the conclusion of his term of employment with RRS, Doyle was not paid wages, to include all overtime wages due, within 30 days of performing the work. *See* O.R.C.§ 4113.15(B).

131. Doyle's unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled paydays.

132. In violating the OPPA, RRS acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

**COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF 29 U.S.C. § 215(A)(3).**

133. Doyle restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

134. Pursuant to the FLSA, 29 C.F.R. § 215(a)(3), it is a violation for any employer to, "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or as testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

135. During March of 2020, Doyle complained both verbally and in writing to Defendants about their failure to pay him for all hours worked.

136. Defendants took adverse actions against Doyle in response to complaints about not being paid for all hours worked, to include docking Doyle's hours and preventing him from returning to work for several days during April of 2020.

137. Defendants retaliated against Doyle by terminating his employment.

138. There is a casual link between the adverse actions and the employment actions herein, including the termination of Doyle.

139. As a result of Defendants acts, Doyle has suffered and will continue to suffer damages.

140. Defendants are liable to Doyle for liquidated damages and all reasonable attorneys incurred in pursuing this action.

**COUNT V: RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION.**

141. Doyle restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

143. During March of 2020, Doyle complained both verbally and in writing to Defendants about their failure to pay him for all hours worked.

144. Defendants took adverse actions against Doyle in response to complaints about not being paid for all hours worked, to include docking Doyle's hours and preventing him from returning to work for several days during April of 2020.

145. Defendants retaliated against Doyle by terminating his employment.

146. There is a casual link between the adverse actions and the employment actions herein, including the termination of Doyle.

147. As a result of Defendants' acts, Doyle has suffered and will continue to suffer damages.

148. Pursuant to O.R.C § 4111.14(J), Doyle is entitled to an amount set by the court sufficient to compensate the Doyle and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued.

149. Defendants are liable to Doyle for liquidated damages and all reasonable attorneys incurred in pursuing this action.

### COUNT VI: UNLAWFUL RETALIATORY TERMINATION IN VIOLATION OF THE FFCRA.

150. Doyle restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

151. Section 5104 of the FFCRA provides that it "shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who (1) takes [EPSL]

leave ..., and (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to [use of EPSL] (including a proceeding that seeks enforcement of [the EPSL provisions of the FFCRA]), or has testified or is about to testify in any such proceeding."

152. Doyles' emails to Wells and Smart concerning his reasonable belief that he was entitled to pay while on an employer-required quarantine under the FFCRA qualified as "fil[ing] a complaint" within the meaning of the FFCRA. See *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011); *Moore v. Freeman*, 355 F.3d 558, 562-63 (6th Cir. 2004).

153. On April 22, 2020, Doyle engaged in protected activity by asserting his reasonable belief that he was entitled to pay while on an employer-required quarantine under the FFCRA to Wells.

154. On April 23, 2020, Doyle engaged in protected activity by asserting his reasonable belief that he was entitled to pay while on an employer-required quarantine under the FFCRA to Smart.

155. A week and a half after Doyle engaged in protected activity under the FFCRA, Defendants terminated his employment.

156. Defendants terminated Doyle in retaliation for his complaints regarding his perceived rights under the FFCRA.

157. In terminating Doyle, Defendants willfully violated section 5104 of EPSLA.

158. Defendants willful violation of the FFCRA and the EPSLA constitutes a violation of the FLSA, 29 U.S.C. §215(a)(3).

159. There is a casual link between the adverse actions and the employment actions herein, including the termination of Doyle.

160. As a result of Defendants acts, Doyle has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Doyle requests judgment against each Defendant and for an Order:

a. Awarding Doyle unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b. Awarding damages, including actual, general, special, incidental, statutory, treble, liquidated, and consequential to Doyle in an amount to be determined at trial;

c. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq and the FFCRA and the EPSLA, Pub. L. 116-127 § 5104.

d. Issuing a declaratory judgment that Defendant violated the recording-keeping requirements of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a), and the OMWFSA, R.C. § 4111.08;

e. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

f. Awarding pre-judgment and post-judgment interest as provided by law;

g. Awarding reasonable attorneys' fees and costs; and

h. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff David Doyle.*

## JURY DEMAND

Plaintiff David Doyle demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**